WINNE v. THE ILLINOIS CENTRAL R. R. Co.

31 583
144 345

1. Evidence: RAILROAD: CARRIER. In an action to recover damages of a railroad company for injury to a lot of flour during its transportation, the evidence of a witness, who only saw a part of the flour examined at the place of destination, is admissible on behalf of plaintiff. The objection that the witness only saw a *part* of the flour examined, does not go to his competency,

2. Common carrier: EXCEPTIONS OF LIABILITY: ONUS. In all cases of loss or injury to property intrusted to a common carrier for transportation, the burden of proof is on him to show that the loss was occasioned by the act of God or the public enemies. Proof of the

Winne v. The Illinois Central R. R. Co.

delivery of the goods and their loss or injury while in the carrier's hands, makes out a *prima facie* case for the plaintiff.

3.—— MEASURE OF DAMAGES: RAILROAD. The application of the general rule that, in this class of actions, the measure of damages is the difference between the market value of the goods as delivered and what their value would have been if they had not been damaged in the course of transportation, is not always just and proper.

4.—— It was accordingly *held*, in an action against a railroad company for damages to a lot of flour, that the plaintiff might show and recover what it cost to put the flour in a saleable condition after its arrival at the place of consignment, it appearing that such expenditure was beneficial to the defendant by reducing the damages which it would otherwise have sustained under the operation of the general rule above referred to.

5.—— PRESUMPTION AS TO COMPENSATION. Where goods are delivered to a common carrier to be transported, a promise to pay freights will be implied, and it is not necessary to prove payment or tender of the charges in order to hold him liable in his capacity of common carrier. The law will not presume that the bailment was gratuitous.

*Appeal from Floyd Circuit Court.*

TUESDAY, JUNE 20.

THIS action was brought by the plaintiff to recover damages to 400 barrels of flour, alleged to have been sustained while the same was being transported from Waverly, Iowa, to Chicago, Illinois, on defendant's railroad. The cause was tried to a jury; verdict and judgment for plaintiff, and defendant appeals.

*Or ne & Rood*, and *Starr & Patterson*, for the appellant.

*Pratt & Root* for the appellee.

MILLER, J. — I. Before the commencement of the trial below, the defendant filed a motion to strike out certain

Winne v. The Illinois Central R. R. Co.

portions of depositions taken by the plaintiff. This motion was overruled, and the defendant assigns such ruling as error. The objections to the testimony of the witnesses, as stated in the motion, are immateriality and irrelevancy, and it is urged in argument that as their testimony shows that they could not state the condition of all the flour when it was examined in Chicago; that as they saw only a part of it examined, their evidence should have been excluded.

1. **Evidence:** railroad: carrier.

The statements of the witnesses, that they saw a portion of the flour in controversy examined in Chicago, after it had been delivered by the defendant to the consignee, and that it was damaged by having got wet, was certainly relevant testimony, tending to show that the flour had not been delivered in good order, which was an essential part of the plaintiff's case; and that these witnesses did not see *all* of the 400 barrels examined, and could not therefore testify as to the condition of them all, did not affect the competency of their evidence in respect to the condition of the flour which they did see examined.

That these witnesses did not see all the flour examined afforded proper ground for argument to the jury upon the extent of plaintiff's right of recovery, but was no objection to the relevancy or competency of the evidence.

The other considerations urged by counsel for appellant in respect to the incompetency of portions of the testimony contained in plaintiff's depositions will be considered hereafter in connection with instructions relating to the proper measure of damages.

II. The second error urged in argument is, that there was error in the third and fifth paragraphs of the charge of the court, which were as follows:

2. **Common carriers: exceptions of liability: onus.**

3d. "If you find that plaintiff delivered flour to defendant, to be transported by defendant to Chicago, Ill., as claimed by plaintiff, it was the duty of the defendant to transport the flour to its destina-

tion, and deliver it to plaintiff's consignee or agent in as good a condition as it was when delivered to defendant for transportation, and the defendant will be liable for any damage resulting to the flour while in the custody or control of defendant."

5th. "If from the evidence you believe that plaintiff delivered the flour to defendant as claimed by plaintiff, and that such flour was damaged while in the custody and control of defendant, you will find a verdict for plaintiff."

The appellants insist that these instructions were erroneous, for the reason that "neither of them contain the exceptions to defendant's responsibility as a carrier — the acts of God and the public enemy." Whatever force there would be in this objection is destroyed by the fact that these exceptions *are* embraced in the third and fourth instructions given at the request of the plaintiff. It is further objected by appellant, however, that the exceptions contained in these last instructions cast the burden of proving the exceptions upon the defendant.

Ordinarily the plaintiff makes out a *prima facie* case by showing that he delivered his goods to the carrier in good order, and that when the carrier delivered them to the consignee they were in bad order, or in a damaged condition. The carrier may then show that the injury to the goods was caused by the act of God or the public enemy, and thus be exonerated from liability. It has been the settled law of England for ages, and of America since its first settlement, that a common carrier is responsible for all losses except those occasioned by the act of God or the public enemy, and that the loss of, or damage done to, property in his possession to be carried, is of itself sufficient *prima facie* proof of negligence. Angell on Com. Carr., §§ 67, 148, 149; 2 Kent's Com. 597. And in all cases of loss or injury to property intrusted to a common carrier for transportation, the *burden of proof is upon him*, to show that the loss was occasioned by the act of God

or by public enemies. 2 Greenl. Ev., § 219, and cases cited in note 8; *Angle* v. *The M. & M. R. R. Co.*, 18 Iowa, 555, and cases there cited. See, also, *Porter* v. *The Chicago & N. W. R. R. Co.*, 20 Iowa, 73.

If, however, the *plaintiff's* evidence should show the circumstances which excused the defendant from liability, the plaintiff would not be entitled to a verdict, although the defendant offered no evidence; such, however, was not the fact in this case; and there was, therefore, no error in the instructions under consideration.

III. The court below, in the ninth paragraph of the charge, directed the jury that, " if the plaintiff's consignee or agent received the flour in a damaged and unsaleable condition, and necessarily had to go to expense to put the flour in a saleable condition, plaintiff will be entitled to recover any reasonable expense thus incurred." The giving of this instruction is assigned as error, and appellant's counsel urge that the true rule or measure of damages is the difference between the fair market value of the flour *as delivered* to the consignee, and what would have been its fair market value if it had not been injured while in the carrier's possession, at the date of delivery.

3. —— measure of damages: railroad.

The rule contended for is undoubtedly the general rule. Its application, however, is not always just and proper. It might have operated in this case very severely and unjustly on the defendant, for there is evidence tending to show that when the flour came from the hands of the carrier to the consignee it was unsaleable; that it had no market value because it could not be sold at all in the market, whereas, by a trifling expense, the flour was rendered saleable. Nor is the instruction in conflict with the rule contended for by appellant; for by means of the expense incurred in cleaning the flour and rendering it marketable the amount of such expense was added to the value of the flour in its damaged condition. If the flour

in the condition it was delivered by the defendant to the consignee was unsaleable, and it could be made saleable by incurring a reasonable and necessary expense for that purpose, such expense was for the benefit of the defendant.

Had the court given the broad general rule contended for by the counsel for defendant without qualification, and the jury been convinced that the flour when and as it was delivered by the defendant was unsaleable in the market, was of no value therein, they would have been warranted in assessing the damages at the full market value thereof in good condition, resulting in a verdict against the defendant of thousands instead of hundreds of dollars. By the trifling expense of 25 cents per barrel, the flour, before unsaleable, was rendered fit for market; and the evidence tends to show that this expense was necessarily the result of the injury to the flour, which the plaintiff had to incur in order that the flour be at all marketable. That such expenses under such circumstances may be given by the jury as damages we have no doubt. See Angell on Com. Carr., § 490 a; Pierce's Railr. Law, 465.

IV. The appellant requested the court to instruct the jury that, "unless plaintiff has proved to you that the defendant was a common carrier, and received or was to receive pay or pecuniary consideration for such carrying, he must prove that the flour was damaged while in defendant's custody, and through gross neglect of defendant; or he must prove that the defendant did not use as great care and diligence in taking care of the same as a man of ordinary prudence takes of his own property of the same character under like circumstances." The refusal to give this instruction is assigned as error, and it is argued by appellant's counsel that, "unless the defendant was paid or offered compensation, it (defendant) was a gratuitous bailee and not an insurer, and hence not required to exercise more than ordinary care." The evidence sufficiently shows that the defendant is a common

5.——presumption as to compensation.

carrier, that the flour was delivered to it and transported in the usual course of business; and without any agreement for the price of conveyance, the carrier became entitled to the same, and if not paid might recover on the *quantum meruit.* Angell on Com. Carr., § 392. When goods are delivered to a common carrier to be transported, a promise to pay freights will be implied, and it is not necessary to prove payment or tender of the charges in order to hold the carrier liable in his capacity *as* a common carrier. The law will not presume, without proof, that the bailment was gratuitous, and if the carrier claims exemption from liability on that ground, the burden of proof is upon him. When the defendant is shown to be a common carrier, the law itself supplies the proof of the contract so far as regards the extent or degree of his liability (2 Greenlf. on Ev., § 210), and if he would exonerate himself or modify his liability, the burden is upon him. Id., §§ 216, 219. The entire weight of the responsibility, rigorously imposed by law upon a common carrier, falls upon him contemporaneously with a complete delivery of the goods to him to be forwarded, if accepted, *with or without* a special agreement as to reward. Angel on Com. Car., § 129. As before remarked, the evidence shows that the plaintiff delivered the flour to the defendant; that it was accepted and forwarded in defendant's cars to the consignee, and the evidence is silent as to whether there was an express contract to pay freight or not, or whether the freight was paid or not. Under such circumstances it must be presumed that the property of the plaintiff was carried for the usual and customary rates, which the plaintiff has either paid or is liable to pay to the defendant. Edwards on Bail. 427.

V. Appellant assigns error on the overruling of his motion for a new trial on the ground that the verdict was not sustained by the evidence. We are of opinion that the

verdict is sustained by sufficient evidence, and that the defendant's motion for a new trial was properly overruled.

The judgment of the circuit court must be

Affirmed.